UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DOLEN GLENN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:14-cv-00372-JMS-WGH |
| ) | |
| DICK BROWN Superintendent, ) | |
| ) | |
| Respondent. ) | |

**Entry Discussing Petition for Writ of Habeas Corpus**

The petition of Dolen Glenn for a writ of habeas corpus challenges a prison disciplinary proceeding identified as WVE 14-05-0061. For the reasons explained in this Entry, Glenn's habeas petition must be **denied**.

## Discussion

### A. Standard

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974).

**B. The Disciplinary Hearing**

On May 12, 2014, James Linneweber issued a Report of Conduct charging Glenn with violating a law (forgery) in violation of Code A100. The Report of Conduct states:

> On 5/12/14, I, CWM J. Linneweber, rec[ei]ved copies from the law library which had been requested by Offender Dolen Glenn, #860216, who lives in L Housing Unit, Cell 304. As is my normal procedure, I fanned the pages to make sure there was not copies belonging to others, or other items, mixed in the stack. When I fanned these copies I noticed the original and multiple copies of a "Certified Counselors Statement of Inmate Trust Fund Account" which I had prepared for Offender Glenn on 4/30/14. Item 6 of that statement requests the monthly state pay received by the offender. Offender Glenn just started working on April 1 and has not received state pay for several months, therefore I made a reasonable estimate and wrote "Estimate $47.00 Just Started Job 4/1/14." Before submitting the form for copying, Offender Glenn covered the $ and the first ½ of the number "4" with a small white patch, making it read 17.00. Given that this form is part of documents to be filed in Federal Court Offender Glenn's actions constitute forgery, a Class C felony. The same actions appear to have occurred with Average Monthly Deposit which he changed from $16.22 to $6.22.

CWM Linneweber then issued an addendum to the Report of Conduct, stating:

> This is an addendum to the information contained in the A-100 conduct report I wrote on Offender Dolen Glenn on Monday 5/12. When Offender Glenn learned that I was going to issue a conduct report due to discovering a forged document intended for submission to the Northern District of Indiana Federal Court, he attempted to persuade me to drop the charges to at least a C- presumably so that he could keep his job in Dining. He was expressing his sorrow and that he didn't mean to do anything wrong. At that juncture I pulled the original document, on which the white-out or correction tape was clearly visible, and told him that it was obvious that he intended for the numbers to be changed, and it wasn't just an oversight or an error. He then told me that "he" hadn't personally changed the numbers; I asked for clarification and he stated he had "someone" look over his documents and that "someone" thought "it would look better" if the numbers for monthly state pay, and average monthly balance were lower. He further stated that "someone" then changed the numbers for him. I told him that I was still going to issue the conduct report because the forgery was on HIS documents, pertained to HIS case, and had been submitted for copying by HIM . . . .

Glenn was notified of the charge on May 15, 2014, when he was served with the Report of Conduct and the Notice of Disciplinary Hearing (Screening Report). The Screening Officer noted

2

that Glenn wanted to call Offender Eric White as a witness and that he did not request any physical evidence. White stated, "I was the one who jokingly changed the numbers on Glens [sic] paperwork. Not knowing he only had that one copy, I did'nt [sic] mean to get him into trouble, I'm ready to take my punishment. He should not be the one to get punished. I should."

The Hearing Officer conducted a disciplinary hearing on May 19, 2014, at which time Glenn stated, "I handed Ofc. Clark the paperwork on May 8, 2014 to be submitted to the Court." He also submitted an additional statement. The Hearing Officer found Glenn guilty of violating state law in violation of Code A100. The Hearing Officer relied on the staff reports, Glenn's statement, photos, and witness statements. The recommended and approved sanctions included a written reprimand, one month of lost commissary, the deprivation of 100 days of earned credit time, and the demotion from credit class I to credit class II. The Hearing Officer imposed the sanctions because of the seriousness and nature of the offense and the likelihood of the sanction having a corrective effect on his future behavior. Glenn's appeals were denied and he filed the present petition for a writ of habeas corpus.

**C. Analysis**

Glenn challenges the disciplinary action against him, arguing that certain Indiana Department of Correction (IDOC) policies were violated, that he was denied a lay advocate, that he was denied the right to present evidence, that the evidence against him was insufficient, that he was denied an impartial decision-maker, and that he did not receive a written statement of the Hearing Officer's decision.

1. <u>IDOC Policy Violations</u>

Glenn argues that there were chain of custody issues regarding the evidence and that there were mistakes in the conduct report and screening report.

Glenn raises several issues related to the chain of custody of the evidence, claiming that there was no chain of custody because there was no evidence card. Essentially, Glenn argues that the evidence was not handled pursuant to IDOC policy. But violations of IDOC policy do not entitle an offender to habeas relief. *Hester v. McBride*, 966 F. Supp. 765, 774-75 (N.D. Ind. 1997). Furthermore, there is nothing in the record to suggest that there was a problem with the chain of custody. The document at issue was delivered to the evidence locker after being confiscated and pictures of the document were considered as evidence by the Hearing Officer. Even if there had been a problem, gaps in the chain of custody do not destroy the reliability of evidence in disciplinary proceedings. *See Webb v. Anderson*, 224 F.3d 649, 652-53 (7th Cir. 2000). Glenn has therefore failed to show that there has been a due process violation with regard to the chain of custody of the evidence at issue.

In addition, any mistakes in the screening report and conduct report identified by Glenn – based on the alleged lack of an evidence card and alleged timing errors – do not rise to the level of due process violations. Finally, to the extent that Glenn also argues that he should have been charged different conduct violations than the violation he was charged, he shows no error in the charge of violating state law based on the facts.

2. Lay Advocate

Glenn also argues that he was denied a lay advocate, but the record reflects that Carl Drucker II was appointed to be Glenn's lay advocate and he agreed to serve as such. Glenn's arguments to the contrary are not supported by the record. Further, even if he had not been provided a lay advocate, the record reflects that Glenn was able to understand the proceedings and present a defense to the charges against him. Because due process requires a lay advocate only when the

inmate is illiterate or the issues are particularly complex, *Wolff*, 418 U.S. at 570, even if Glenn was denied a lay advocate, such denial did not result in the denial of due process. To the extent Glenn claims that IDOC policy was violated, such violation does not amount to a due process violation. *Hester*, 966 F. Supp. at 774-75.

        3. Evidence

Glenn also argues that he was denied the right to present a witness statement by Officers Clark and Carpenter and evidence relating to Eric White's disciplinary proceedings. Among the basic requirements of due process in a prison disciplinary proceeding is the opportunity for the inmate to call witnesses and present documentary evidence in his defense. *Wolff*, 418 U.S. at 566. Here, the record reflects that the only witness Glenn originally requested was White, who submitted a statement that he was the one who had changed the documents. Glenn later requested additional witnesses and evidence. He asserts that the statements of Officers Clark and Carpenter would have shown that the trust statement at issue had been filed with the District Court before the Report of Conduct was issued. But the statement of Officer Clark attached to the petition as Exhibit C and C-2 shows that the Officer Clark received the documents in an envelope addressed to the law library on May 8, 2014. The statement contains no assertion regarding when the document at issue was filed in court. Any statement by Clark and Carpenter regarding when the trust account statement was filed in court therefore would not constitute relevant or exculpatory evidence because it did not conflict with Linneweber's discovery of the document as coming from the library on May 12, 2014.

Glenn also asserts that evidence regarding the disciplinary action against White should have been presented to show that Glenn did not forge the documents at issue. But the documents relating to White's participation in the forgery were not exculpatory because the addendum to

5

Glenn's Report of Conduct made clear that Glenn did not personally alter the documents but knew that another offender had done so before they were filed. Further, White did provide a statement that he had been the one to change the documents. His disciplinary records relating to the forgery were redundant to White's statement that he had altered the documents. Glenn argues that White's statement establishes that Glenn was unaware of the forgery, but White's statement is not exculpatory as Glenn asserts. Whether or not White was the one to alter the document, the conclusion that Glenn used it is sufficient to find Glenn guilty of committing forgery. Under Indiana law, a forgery can be committed by either making or uttering a written instrument with intent to defraud. Ind. Code 35-43-5-2(b). Even if White altered the instrument, it was Glen who filed it in his pending lawsuit.

Due process requires only access to witnesses and evidence that are exculpatory. *Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride,* 81 F.3d 717, 721 (7th Cir. 1996). The denial of the right to present evidence will be considered harmless, unless the prisoner shows that the evidence could have aided his defense. *See Jones v. Cross,* 637 F.3d 841, 847 (7th Cir. 2011). Because, as discussed above, the requested evidence was not material or exculpatory, the fact that Glenn was not permitted to include this evidence did not impact the outcome of the hearing and did not rise to the level of a due process violation.

### 4. Sufficiency of the Evidence

Glenn also raises several challenges to the sufficiency of the evidence supporting his disciplinary conviction. In reviewing the sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the

evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999); *see also Meeks v. McBride,* 81 F.3d 717, 720 (7th Cir. 1996) ("because the 'some evidence' standard . . . does not permit courts to consider the relative weight of the evidence presented to the disciplinary board, it is '[g]enerally immaterial that an accused prisoner presented exculpatory evidence unless that evidence directly undercuts the reliability of the evidence on which the disciplinary authority relied' in support of its conclusion")(*quoting Viens v. Daniels,* 871 F.2d 1328, 1335 (7th Cir. 1989)). Instead, the "some evidence" standard of *Hill* is lenient, "requiring only that the decision not be arbitrary or without support in the record." *McPherson,* 188 F.3d at 786. The evidence here was constitutionally sufficient. *See Henderson v. United States Parole Comm'n,* 13 F.3d 1073, 1077 (7th Cir. 1993) (a federal habeas court "will overturn the [hearing officer's] decision only if no reasonable adjudicator could have found [the petitioner] guilty of the offense on the basis of the evidence presented.").

Here, the evidence presented at the disciplinary hearing included the conduct report and addendum by CWM Linneweber stating that Glenn's file contained an altered statement of trust account and that Glenn told him that someone else changed the numbers on the statement. This constituted sufficient evidence to support the charge against Glenn despite the fact that Glenn later stated that he was unaware of the forgery.

### 5. Impartial Decision Maker

Glenn also asserts that he was denied a fair and impartial decision maker. While due process does require an impartial decision maker, due process requires recusal only where the decision maker has a direct or otherwise substantial involvement in the circumstances underlying the charges against the offender. *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983).

Because there is no evidence that the hearing officer in this case had any involvement in the acts at issue, Glenn has not shown that his due process rights were violated in this respect.

      6. Copy of the Decision

Glenn also asserts that he was denied a copy of the hearing officer's decision. Although due process entitles an inmate to a written statement by the factfinder as to the evidence relied on and the reasons for the disciplinary action, this requirement is not onerous. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). Here, the Hearing Officer read the findings of fact to Glenn, but Glenn alleges that he did not receive a written copy until a few days later. But Glenn was read the decision orally, received a written copy a few days after the hearing, and was able to prepare a timely appeal. Glenn has therefore failed to show prejudice from any alleged delay in receiving a written copy of the decision. Without a showing of prejudice, any alleged due process error is harmless. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (offender suffered no prejudice so any conceivable due process error was harmless).

      **D. Conclusion**

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceedings. Accordingly, Glenn's petition for a writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this Entry shall now issue.

      IT IS SO ORDERED.

Date: January 12, 2016

                                                                      Hon. Jane Magnus-Stinson, Judge
                                                                      United States District Court
                                                                       Southern District of Indiana

Distribution:

Dolen Glenn, #860216
Wabash Valley Correctional Facility
Electronic Service Participant - Court only

Electronically registered counsel